**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Canchu Lin**, | : | Case No. 3:11 CV 00004 |
| Plaintiff, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| **Bowling Green State University**, | : | |
| Defendant. | : | |

## I.  INTRODUCTION.

This case, arising under the CIVIL RIGHTS ACT of 1991, Pub. L. No. 102-166, 105 Stat.1071 (1991), was referred to the undersigned Magistrate for report and recommendation.  Pending is Defendant's Motion for Summary Judgment, to which Plaintiff filed a Response, Defendant filed a Reply to the Response and Plaintiff filed a Sur-Reply (Docket Nos. 36, 48, 50 & 55).  For the reasons that follow, the Magistrate recommends that the Court grant the Motion for Summary Judgment.

## II.  PARTIES TO THE LITIGATION.

Plaintiff, a resident of Perrysburg, Ohio, was born in China.  He is Chinese (Docket No. 1, ¶ 1).

Defendant is Bowling Green State University (BGSU), a public university offering undergraduate and graduate programs.  BGSU is located in Bowling Green, Ohio (Docket No. 1).

### III.  NON PARTIES TO THE LITIGATION.

The following persons are nonparty witnesses to the events that give rise to the allegations in the Complaint.

Lynda Dixon, a tenured professor at BGSU, is Native American.

In 2009, Kenneth Borland was the Senior Vice President for Academic Affairs & Provost; Lara Lengel was an associate professor; Simon Morgan-Russell was the Dean of the College of Arts and Sciences; Terry Rentner was an associate professor and the Director of the School of Media and Communications; and Raymond Schuck was an instructor.  All of these nonparty witnesses except Lynda Dixon are white Caucasian Americans.

### IV.  FACTUAL BACKGROUND.

The facts of this case arise from the actions of the non parties acting on behalf of Defendant and their interrelationship with Plaintiff.  In the Answer, Defendant admitted the facts that follow (Docket Nos. 1 & 6).

Within the College of Arts and Sciences, BGSU has a School of Media and Communication. The School of Media and Communication includes a Department of Communication (DC), Department of Journalism and Public Relations and Department of Telecommunications.  In August 2003, Defendant employed Plaintiff as an instructor in the DC.  In August 2004, Plaintiff was promoted to an assistant professor, a tenure track position, in the DC.

An electronic mail message advising of committee vacancies was forwarded to DC faculty members on August 13, 2009.  Interested faculty members were instructed to contact the author of

the electronic mail if they had an interest in any of the vacancies.  Plaintiff contacted the author of the electronic mail, expressing an interest in the undergraduate coordinator position, which was one of the vacancies.  On August 18, 2009, Drs. Rentner, and Dixon met with Plaintiff regarding his expression of interest in the undergraduate coordinator position.  They agreed that Plaintiff should consider the Currier (Foundation) speaker committee position instead because it was an easy job.

There was a meeting of the faculty members of the School of Media and Communication regarding the committee vacancies on August 19, 2009.  Dr. Dixon nominated Plaintiff for the Currier speaker position and Plaintiff was selected by ballot.  Dr. Schuck, an instructor in the DC, was awarded the undergraduate coordinator position.

Plaintiff timely submitted a formal portfolio application for tenure and promotion to associate professor.  On September 28, 2009, the DC voted to recommend Plaintiff for tenure and promotion to Associate Professor.  The vote by the four eligible faculty members was unanimous, finding that Plaintiff met the departmental threshold in each of the three relevant domains of teaching, research, and service.

On October 22, 2009, Dr. Lengel, one of four faculty members who voted to recommend Plaintiff for tenure and promotion to associate professor, submitted a memorandum to Dr. Rentner regarding Plaintiff's application for tenure and promotion to associate professor.  The last sentence of the memorandum states as follows:

> "Upon careful reflection and after completing this evaluation as department chair, I am not comfortable putting forth a positive recommendation for promotion to associate professor with tenure."

Also in her October 22-memorandum, Dr. Lengel referenced another faculty member who had reservations about recommending Plaintiff for tenure and promotion to associate professor.

3

Even though the name of the faculty member was not mentioned, the reference was to Dr. Dixon, who also voted to recommend Plaintiff for tenure and promotion to associate professor.

On October 23, 2009, Dr. Rentner submitted a memorandum to Dr. Morgan-Russell recommending that Plaintiff not be granted tenure and not be promoted to Associate Professor.

On January 25, 2010, Dr. Morgan-Russell submitted a memorandum to Dr. Borland, recommending that Plaintiff not be granted tenure and that he not be promoted to Associate Professor.

On March 17, 2010, Dr. Borland submitted a letter to Plaintiff informing him that his portfolio application would not be forwarded to Defendant's President with a positive recommendation for promotion to associate professor with tenure.

On or about March 30, 2010, Dr. Rentner changed Plaintiff's merit evaluation from a two, which denotes "exceeding expectations" to a one, which means "meets expectations."  Upon reconsideration, the School Merit Committee restored Plaintiff's overall merit score to a "two." Dr. Rentner deferred to the Committee's determination.

## V. PROCEDURAL FRAMEWORK.

Plaintiff filed an internal complaint of discrimination with the Office of Equity and Diversity on December 3, 2009.

On June 3, 2010, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC).  The EEOC issued a Dismissal and Notice of Rights on October 6, 2010.

Plaintiff timely filed this lawsuit.  Defendant filed a Motion for Summary Judgment.

During the pendency of this case, the hearing board for grievance convened a full regular

hearing on April 22, 2011, at which Plaintiff and Dr. Renter, Dr. Morgan-Russell and Dr. Borland appeared.  The board found that Plaintiff had not fulfilled the burden of proof required to demonstrate that the tenure and promotion committee decision should be overturned.

### VI.  MOTION FOR SUMMARY STANDARD OF REVIEW.

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir. 2003) *cert. denied*, 124 S. Ct. 155 (2003) (*citing* FED. R. CIV. P. 56(c)).  In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party.  *Id.* (*citing Matsushita Electrical Industry Company v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1356 (1986)).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (*citing Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2511 (1986)).  Stated another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Freudeman v. Landing of Canton*, 2011 WL 1326043, *2 (N. D. Ohio 2011) (*citing Anderson*, 106 S. Ct. at 2511; *see also Wexler v. White's Fine Furniture, Incorporated*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment")).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *Id.* (*citing Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986)).  General averments or conclusory allegations of an affidavit do not create specific fact

5

disputes for summary judgment purposes.  *Id.* (*See Lujan v. National Wildlife Federation*, 110 S. Ct. 3177, 3188 (1990)).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Id.* (*citing Reid v. Sears Roebuck & Company*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Incorporated*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623–26 (3rd Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' "  *Id.* (*citing Street v. J. C. Bradford & Company*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson, supra*, 106 S. Ct. at 2512)).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* (*citing Anderson,* 106 S. Ct. at 2511).

## VII. Discussion.

Defendant claims entitlement to judgment as a matter of law because Plaintiff cannot make a prima facie case for discrimination based on race or national origin, retaliation or hostile work environment.  Specifically, Defendant claims that there is no evidence that the University's decision on Plaintiff's tenure and promotion application was motivated by race or national origin; rather, Plaintiff was denied tenure because of his deficiencies in delivering student services and therefore failing to meet all the prerequisites that typically culminate in the award of tenure.  It is Defendant's

contention that Plaintiff has not provided indirect evidence that he was treated differently than other similarly situated professors.  Neither can Plaintiff make a prima facie case for retaliation nor hostile work environment.

1.      DISCRIMINATION BASED ON RACE OR NATIONAL ORIGIN.

Plaintiff raises a claim under Section 101 of the Civil Rights Act of 1991 which amended 42 U. S. C. § 1981 to prohibit racial discrimination in all aspects of the employment relationship. Section 1981 provides:

> (a)     **Statement of Equal Rights**.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b)     **"Make and enforce contracts" defined**:  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c)     **Protection against impairment**:  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

To establish a claim for racial discrimination under Section 1981, a plaintiff must plead and prove that 1) he or she belongs to an identifiable class of persons who are subject to discrimination based on their race; 2) the defendant intended to discriminate against him or her on the basis of race; and 3) the defendant's discriminatory conduct abridged a right enumerated in Section 1981(a). *Jeanlouis v. Product Action,* 551 F. Supp. 2d 687, 691 (N. D. Ohio 2007) (*citing Amini v. Oberlin College*, 440 F. 3d 350, 358 (6th Cir. 2006) (*citing Christian v. Wal-Mart Stores*, 252 F. 3d 862, 871-872 (6th Cir. 2001)).  When a plaintiff seeks to prove intentional discrimination in a Section 1981 case, a plaintiff may proceed by introducing direct evidence of discrimination or by proving

circumstantial evidence which would support an inference of discrimination. *Id.* (*citing Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997)). The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both. *Id.*

A.     **DIRECT EVIDENCE STANDARD**.

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him or her because of race or other protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even if the employer had not been motivated by discrimination. *Id.* at 691-692 (*citing Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 109 S. Ct. 1775, 1787 (1989)). Direct evidence is that "evidence that proves the existence of fact without requiring any inferences." *Id.* (*citing Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 548 (6th Cir. 2004)). The presence of direct evidence in employment actions is rare. *Id.* (*citing United States Postal Service Board of Governors v. Aikens*, 103 S. Ct. 1478, 1482, (1983)).

B.     **DIRECT EVIDENCE OF DISCRIMINATION IN THIS CASE**.

Plaintiff sufficiently alleges that he is a member of a protected class. Plaintiff satisfies prong one of the direct evidence paradigm.

At the second prong, Plaintiff may provide intentional discrimination by presenting credible, direct evidence of discriminatory intent by the decision maker. To support his conclusions that Defendant intended to discriminate against him because he is Chinese, Plaintiff makes references to Defendant's intent to discriminate in a conversation he had with Dr. Morgan-Russell, an encounter he had with Dr. Rentner and the acts of avoidance by Dr. Lengel.

8

Plaintiff had a conference with Dr. Morgan-Russell once the recommendation of the committee to deny tenure was made.  Plaintiff testified that Dr. Morgan-Russell explained that the real reason that he was not recommending Plaintiff for tenure was that Plaintiff "did not speak English as a native speaker or something like that" (Docket No. 23, p. 29 of 39).  Dr. Morgan-Russell denied that he made such statements (Docket No. 46, pp. 72-73 of 89).

Plaintiff alleged that Dr. Rentner avoided him.  Once she expressed her belief that Plaintiff did not know American culture and that he did not interact with students at a satisfactory level (Docket No. 23, p. 31 of 39).  Dr. Rentner testified that she did not make such comments (Docket No. 45, pp. 47-48 of 149).

Plaintiff suggests that Dr. Lengel treated him differently.  She showed great warmth to her white counterparts.  Dr. Lengel failed to conduct his peer review because of her patent discomfort with Plaintiff.  Further she failed to adopt Plaintiff's suggestions about chartering Lambda Pi Eta, a communications honor society (Docket No. 23, pp. 23, 31-32 of 39).

Applying the standard established at step two of the direct evidence cases and assuming that Plaintiff's allegations are true, the Magistrate finds that these facts suggest  personality and/or cultural differences.  This evidence, however, requires significant inferences be made to prove the existence of the fact that the non-witnesses' behavior was the result of racial discrimination.  Accordingly, Plaintiff does not satisfy the second prong of the direct evidence test.

At step three of the analysis, there were recommendations from an impartial committee made after review of Plaintiff's merit-based performance of his professional responsibilities.  It is well established that eligible instructors have a minimal property interest in a fair tenure review process.  *See Board of Regents v. Roth*, 92 S. Ct. 2701, 2709 (1972).  The State of Ohio has not created a

9

property interest in evaluating an employee performance or decisions such as tenure.  *Dodson v. Wright State University*, 91 Ohio Misc. 3d 57, 697 N. E. 2d 287 (1997).  Neither has BGSU established a regulation that provides clear, nondiscretionary entitlement to tenure.  Without commenting on the fairness of the tenure review process, the Magistrate finds no direct evidence that Defendant's decision to adopt the recommendation that Plaintiff be denied tenure and a promotion somehow infringed upon Plaintiff's rights specifically enumerated in Section 1981(a).  Clearly Plaintiff cannot comply with the third prong of the direct evidence test.

### C.     CIRCUMSTANTIAL EVIDENCE STANDARD.

Under the circumstantial evidence approach, a three-part analysis developed in the *McDonnell Douglas Burdine* line of cases is applied.  *Jeanlouis, supra*, 551 F. Supp. 2d at 692 (*citing McDonnell Douglas Corporation v. Green*, 93 S. Ct. 1817, 1824 (1973)).  To state a prime facie case, Plaintiff must establish that 1) he or she is a member of a protected class; 2) he or she was qualified for his or her job and performed it satisfactorily; 3) despite his or her qualifications and performance, he or she suffered an adverse employment action; and 4) that he or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his or her protected class.  *Id*. (*citing McDonnell Douglas*, 93 S. Ct. at 1824).

"To be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of 'comparable seriousness.' " *Blessing v. Ohio University,* 2011 WL 6076327, *12 (S. D. Ohio 2011 (*citing Colvin v. Veterans Administration Medical Center*, 390 Fed. Appx. 454, 458 2010) *cert. denied*, 131 S. Ct. 1499 (2011) (*quoting Clayton v. Meijer, Incorporated*, 281 F.3d 605, 611 (6th Cir. 2002)).  In assessing the relative seriousness of the employees' acts, a court may consider "whether the individuals have dealt with the same supervisor, have been subject to the same

10

standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (*citing* Colvin, 390 Fed. Appx. at 458) (*quoting Ercegovich v. Goodyear Tire & Rubber Company*, 154 F.3d 344, 352 (6th Cir. 1998)).  While there need not be an "exact correlation" between the plaintiff and the non-protected employee who was treated more favorably, the plaintiff must demonstrate that he and his proposed comparator are "similar in all of the relevant aspects."  *Id.* (*citing Colvin*, 390 Fed. Appx. at 458) (*quoting Ercegovich*, 154 F.3d at 352).  The court must "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  *Id.* (*citing Colvin*, 390 Fed. Appx. at 458 (*quoting Ercegovich*, 154 F.3d at 352).

If the plaintiff is able to establish this prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason for the employee's rejection."  *Jeanlouis, supra*, 551 F. Supp. 2d at 692. If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination.  *Id*. The plaintiff must then establish that the proffered reason was a mere pretext by showing that the stated reason had no basis in fact; the stated reasons were not the actual reasons; and that the stated reasons were insufficient to explain the defendant's action.  *Id*.

### D.    CIRCUMSTANTIAL EVIDENCE OF DISCRIMINATION IN THIS CASE.

In asserting a prima facie case for discrimination based on race, Plaintiff has established that he is a member of a protected class, that he was subjected to an adverse employment action and that he was qualified for the job.  By his own admission, there was a legitimate concern that Plaintiff did

not perform his job satisfactorily as evidenced by scores below the department's average in the area of face-to-face teaching (Docket No. 26, p. 42 of 93).

In conducting an independent comparison of Plaintiff's employment status and that of other employees outside his protected class, the Magistrate reiterates that Kathy Bradshaw and Lynda Dixon, both tenured professors, are not comparators with whom Plaintiff is similarly situated.

Kathy Bradshaw is Caucasian.  Lynda Dixon is Native American.  Plaintiff is Chinese.

Plaintiff, an assistant professor in DC,  was denied tenure and promotion during the 2009-2010 school year.  Kathy Bradshaw was granted tenure and promotion during the 2006-2007 school year.  Lynda Dixon was granted tenure in 1999.  Kathy Bradshaw was in the Department of Journalism when she applied for and was granted tenure.

Dr. Rentner was the Chair of the Department of Journalism at the time she recommended that Kathy Bradshaw be granted tenure and promoted.  Dr. Renter had been elevated to the Director of the School of Media and Communication at the time she recommended that Plaintiff not be given tenure or promoted.

Recommendations as to Kathy Bradshaw's application were made by a different college dean, department chair and different department faculty members.  As to Lynda Dixon, a different University provost was the decision maker on her application for tenure and recommendations as to her application were made by a different college dean, school director and department chair from those who made recommendation as to Plaintiff's application.

The evidence presented shows these individuals were not engaged in the same conduct without differentiating circumstances.  Each dealt with different supervisors and they were not subject to the same standards.  In sum, Plaintiff cannot establish that he was similarly situated with

12

Kathy Bradshaw or Lynda Dixon.  Having failed to establish a prima facie case for discrimination based in race through circumstantial evidence, the Magistrate does not address whether Defendant articulated some legitimate nondiscriminatory reason for the failure to award Plaintiff tenure and a promotion.

## 2.    RETALIATION.

Plaintiff contends that he was retaliated against for filing a charge with the EEOC and filing an internal complaint with the Office of Equity and Diversity (Docket No. 23, pp. 20, 29 of 39).

Employer retaliation claims brought under 41 U. S. C. § 1981 are governed by the same burden-shifting analysis as are retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII).  *Newton v. Meijer Stores Limited Partnership,* 347 F. Supp.2d 516, 522 (N. D. Ohio 2004) (*citing Wade v. Knoxville Utility Board*, 259 F.3d 452, 464 (6th Cir. 2001)).  Under the Title VII framework, a plaintiff must first establish a prima facie case by demonstrating that 1) the plaintiff engaged in [protected conduct]; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant **thereafter** undertook an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action.  *Id.* (*citing Virts v. Consol. Freightways Corporation*, 285 F.3d 508, 521 (6th Cir. 2002)).

Summary judgment is appropriate where the plaintiff fails to present evidence on any one of the four prongs.  *Id.* (*see Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002)).  Nevertheless, if the plaintiff demonstrates a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.*  Once the defendant articulates its reason, the plaintiff, who bears the burden of persuasion throughout the entire process, must

13

demonstrate that the proffered reason was a mere pretext for discrimination.  *Id.*  The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain the defendant's action.  *Id.* at 522-523.  "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  *Id.* (*citing Virts*, 285 F.3d at 521 (internal citations omitted) (*quoting St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2752 (1993) (emphasis in *St. Mary's* )).

### A.    THE CHARGE FILED WITH THE EEOC.

Plaintiff's claim is predicated on the loss of tenure, a promotion and benefits commensurate with an associate professor position.  He claims that he lost this opportunity, in part, because he sought to enforce the prohibition against discrimination.  Plaintiff knew on or about October 23, 2009, that he was not recommended for tenure.  This adverse action took place before Plaintiff filed his charge with the EEOC on June 3, 2010.  Plaintiff cannot succeed on this claim as he has not alleged or demonstrated that Defendant undertook an adverse employment action after he filed a charge with the EEOC.

### B.    THE CLAIM WITH THE OFFICE OF EQUITY AND DIVERSITY.

Similarly, Plaintiff claims that he was retaliated against because he filed a claim with the Office of Equity and Diversity.  The Magistrate reiterates that Plaintiff knew in October 2009, that the promotion was not forthcoming.  In December 2009, Plaintiff proffered a letter to the Office of Equity and Diversity which explained, in detail, the depths of discrimination he had encountered.  Since the adverse action had already taken place, Plaintiff cannot link Defendant's decision to deny his tenure and a promotion to the filing of the claim with the Office of Equity and Diversity.

3. **HOSTILE WORK ENVIRONMENT**.

In the Complaint, Plaintiff claims that he experienced a hostile work environment that was controlled by co-worker's attitudes on race. In his deposition, Plaintiff premises this claim to four specific arguments. First, Plaintiff recounted that his work environment was made hostile by failure of Dr. Rentner's predecessor to acknowledge him at meetings when he raised his hand. Second, when speaking publicly at department meetings, Plaintiff was deprived of sufficient time to "clarify things." Third, Plaintiff felt that the white faculty was not friendly. Fourth, Plaintiff's co-workers did not initiate conversation with him (Docket No. 23, p. 32 of 39).

A five-element test is usually posited for claims of hostile work environment arising under Title VII. *Williams v. CSX Transportation Company*, 643 F.3d 502, 511 fn. 4 (6th Cir. 2011). The identical test used to analyze cases under Title VII is also applied to cases arising under 42 U. S. C. § 1981. *Id.* (*See Jackson v. Quanex Corporation*, 191 F.3d 647, 658 (6th Cir. 1999) ("We review claims of alleged race discrimination brought under § 1981 . . . under the same standards as claims of race discrimination brought under Title VII . . . ").

To succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that 1) he or she belonged to a protected group, 2) he or she was subject to unwelcome harassment, 3) the harassment was based on race, 4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and 5) the defendant knew or should have known about the harassment and failed to act. *Id.* (*citing Moore v. KUKA Welding Systems & Robot Corporation*, 171 F.3d 1073, 1078–1079 (6th Cir. 1999)). The third element of the five-element test limits the scope of this analysis: only harassment based on the plaintiff's race may be considered. *Id.* (*See Bowman v. Shawnee State University*, 220 F.3d 456, 464

15

(6th Cir. 2000)).   With respect to the fourth element, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* (*citing Harris v. Forklift Systems, Incorporated*, 114 S. Ct. 367, 371 (1993)).  When analyzing that element, consideration is given to harassment "by all perpetrators combined," rather than "divid[ing] and categoriz[ing] the reported incidents." *Id.* (*citing Williams v. General Motors Corporation*, 187 F.3d 553, 562 (6th Cir. 1999)).

In the Response to the Motion for Summary Judgment, Plaintiff concludes that summary judgment should be denied on every claim except the hostile work environment claim.  This apparent concession is because Plaintiff cannot meet the five-element standard.  Distinguishing innocuous behavior and severely hostile or abusive conduct, it is highly probable that Plaintiff was victimized by unwelcome insensitivity to social and cultural contexts.  However he has not correlated such social behavior to membership in a protected class.  In addition, Plaintiff does not allege that the conduct was so frequent or severe that it altered the basis of his employment.

The Magistrate finds that Plaintiff has failed to present evidence that would sustain the third, fourth and fifth elements of this five-prong analysis.  Accordingly, he cannot make a prima facie claim for hostile work environment based on race.  Since there is no jury question on this issue, summary judgment is granted as a matter of law.

16

## VIII. CONCLUSION

For these reasons, the Magistrate recommends that the Court grant the Motion for Summary Judgment and terminate the referral to the undersigned Magistrate.


/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:  March 21, 2012

## IX. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

18